IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YOLANDA B. MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 07-973 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

## I. INTRODUCTION

Pending before the Court are cross-motions for summary
judgment filed by Plaintiff Yolanda B. Marshall and Defendant
Michael J. Astrue, Commissioner of Social Security. Plaintiff
seeks review of final decisions by the Commissioner denying her
claims for disability insurance benefits ("DIB") under Title II of
the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and supplemental
security income benefits ("SSI") under Title XVI of the Social
Security Act, 42 U.S.C. §§ 1381 *et seq.* For the reasons discussed
below, Defendant's motion is granted and Plaintiff's motion is
denied.

## II. BACKGROUND

### A. Factual Background

After graduating from high school in 1975, Yolanda
Marshall worked for several years as a clerk with the Pennsylvania
Welfare Department and then with a housing authority. (Certified

Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 9, "Tr.," at 78.) Beginning in 1995, she worked as a plumber and pipe fitter and in 2000, she completed a certificate program in that trade. (Tr. 66, 78.)

On September 20, 2003, Ms. Marshall was helping other pipe fitters cut heavy fiberglass pipe and load it on to a truck. As she walked backward carrying a section of pipe, she slipped on loose gravel and fell sharply onto her buttocks, hitting her head on the ground. (Tr. 163, 311.) She was taken to the emergency room at a hospital in Sharon, Pennsylvania, treated, and released. She attempted to return to work on September 21, 2003, but was unable to continue working due to pain in her lower back and neck.

B. Procedural Background

Plaintiff filed protective applications for disability insurance benefits and for supplemental security income on January 30, 2004, alleging disability as of September 23, 2003, due to injuries to her spine and neck, along with "bulging disks." (Tr. 60.) Following denial of both applications at the state agency level, she sought a hearing before an Administrative Law Judge ("ALJ") which was held by the Honorable William E. Kenworthy on April 12, 2006. On April 20, 2006, Judge Kenworthy issued his decision, again denying benefits. (Tr. 15-24.) The Social Security Appeals Council declined to review the ALJ's decision on April 11, 2007, finding no reason pursuant to its rules to do so.

2

(Tr. 5-7.) Therefore, the April 20, 2006 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed suit in this Court on July 12, 2007, seeking judicial review.[1]

## C. Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been

---

[1] Consideration by the Court of this appeal was delayed for some seven months while the Social Security Administration attempted to locate Plaintiff's administrative file and the hearing recording.

3

described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV. LEGAL ANALYSIS

### A. The ALJ's Determination

In determining whether a claimant is eligible for supplemental security income, the burden is on the claimant to show

4

that she has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe she is unable to pursue substantial gainful employment[2] currently existing in the national economy.[3] The impairment must be one which is expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000). To be granted a period of disability and receive disability insurance benefits, a claimant must also show that she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). Defendant does not dispute that Ms. Marshall satisfied the first two non-medical requirements and the parties do not object to the ALJ's finding that Plaintiff's date last insured was December 31, 2008.[4] (Tr. 17.)

---

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[3] The claimant seeking supplemental security income benefits must also show that her income and financial resources are below a certain level. 42 U.S.C. § 1382(a).

[4] According to Social Security Administration records, Plaintiff's date last insured was December 31, 2007, not 2008. (Tr. 70.) However, in light of the disposition of this case, this apparent error is harmless.

To determine a claimant's rights to either SSI or DIB,[5] the
ALJ conducts a formal five-step evaluation:

   (1) if the claimant is working or doing substantial gainful
       activity, she cannot be considered disabled;

   (2) if the claimant does not suffer from a severe impairment
       or combination of impairments that significantly limits
       her ability to do basic work activity, she is not
       disabled;

   (3) if the claimant does suffer from a severe impairment
       which meets or equals criteria for an impairment listed
       in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the
       Listings") and the condition has lasted or is expected to
       last continually for at least twelve months, the claimant
       is considered disabled;

   (4) if the claimant retains sufficient residual functional
       capacity ("RFC")[6] to perform her past relevant work, she
       is not disabled; and

   (5) if, taking into account the claimant's RFC, age,
       education, and past work experience, the claimant can
       perform other work that exists in the local, regional or
       national economy, she is not disabled.

20 C.F.R. § 416.920(a)(4); see also Morales, 225 F.3d at 316.

   In steps one, two, and four, the burden is on the claimant to
present evidence to support her position that she is entitled to
Social Security benefits, while in the fifth step the burden shifts
to the Commissioner to show that the claimant is capable of

_____

   [5] The same test is used to determine disability for purposes of
receiving either DIB or SSI benefits. Burns v. Barnhart, 312 F.3d
113, 119, n.1 (3d Cir. 2002). Therefore, courts routinely consider
case law developed under both programs.

   [6] Briefly stated, residual functional capacity is the most a
claimant can do despite her recognized limitations. Social Security
Ruling 96-9p defines RFC as "the individual's maximum remaining
ability to perform work on a regular and continuing basis, i.e., 8
hours a day, for 5 days a week, or an equivalent work schedule."

performing work which is available in the national economy.[7]  Sykes
v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Kenworthy concluded
at step one that Ms. Marshall had not engaged in substantial
gainful activity since shortly after her injury, i.e., September
23, 2003.  (Tr. 17.)  Resolving step two in Plaintiff's favor, the
ALJ concluded she suffered from degenerative disc disease and
depression, both of which were "severe" as that term is defined by
the Social Security Administration.[8]  (Tr. 17-18.)  Although
Plaintiff also received treatment for varicose veins in her legs,
the ALJ concluded these were not severe inasmuch as there was no
evidence they would cause any functional limitations.  (Tr. 19)

At step three, the ALJ concluded Plaintiff's impairments did
not satisfy any of the criteria in Listing 1.04, musculosketal

---

[7]  Step three involves a conclusive presumption based on the
listings, therefore, neither party bears the burden of proof at that
stage.  Sykes, 228 F.3d at 263, n.2, *citing* Bowen v. Yuckert, 482 U.S.
137, 146-147 n.5 (1987).

[8]  *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a), and 140.1521(b),
stating that an impairment is severe only if it significantly limits
the claimant's "physical ability to do basic work activities," i.e.,
"abilities and aptitudes necessary to do most jobs, including, for
example, walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling," as compared to "a slight abnormality"
which has such a minimal effect that it would not be expected to
interfere with the claimant's ability to work, regardless of his age,
education, or work experience.  Yuckert, 482 U.S. at 149-151.  The
claimant has the burden of showing that the impairment is severe.  Id.
at 146, n.5.

system, or Listing 12.04, affective disorders.[9] (Tr. 19-22.) He
further concluded at step four that Ms. Marshall had

> the residual functional capacity to perform at the
> sedentary exertional level, remaining seated most of the
> work day, and lifting no more than 10 pounds
> occasionally. The claimant should have a sit/stand
> option at intervals of about 30 minutes. She is not
> capable of performing jobs that involve a rapid
> production pace or similar sources of a high level of
> work place stress.

(Tr. 22.)

At the hearing, William H. Reed, a vocational expert ("VE"),
had testified that although Plaintiff could not return to work as
a pipe fitter, a person of Ms. Marshall's age, education, work
experience, and RFC could return to her past relevant work as a
clerk receiving rent payments, a position he classified as an
accounts receivable administrative clerk, a semi-skilled, sedentary
position. (Tr. 23, *see also* Tr. 323.) Based on this testimony,
the ALJ determined at step four that Plaintiff had not been
disabled at any time between September 23, 2003, and the date of
his opinion and, consequently, she was not entitled to benefits.
(Tr. 24.)

## B. Plaintiff's Arguments

In the brief in support of her motion for summary
judgment, Ms. Marshall raises three arguments. First, the ALJ

---

[9] Plaintiff raises no objections to the ALJ's analysis of the
severity of her depression and limitations arising therefrom.
Therefore, we do not address the medical evidence related to this
impairment.

8

failed to address the treatment records and report of Dr. Asraf Razzak, Plaintiff's pain specialist. Thus, it is impossible for the Court to know what weight the ALJ gave to that evidence, that is, whether the ALJ rejected Dr. Razzak's opinions or simply ignored them. Remand is therefore necessary for clarification. (Plaintiff's Brief in Support of Motion for Summary Judgment, Doc. No. 13, "Plf.'s Brief," at 7-13.) Second, the ALJ failed to consider Plaintiff's neck pain and headaches at step two of his analysis, nor did he discuss the numerous references to these problems in his analysis. His "*de facto*" conclusion that these impairments were not severe is "plainly inconsistent" with the record. (Id. at 14-20.) Finally, Plaintiff argues that the hypothetical question posed by the ALJ to the vocational expert did not accurately outline all of her work-related limitations of function, specifically, her complaints of neck pain and associated headaches. Consequently, the VE's answer to the question cannot be considered substantial evidence on which the ALJ could rely in reaching his conclusion that Plaintiff could return to her past work as an accounts receivable clerk; again, the case must be remanded for further consideration. (Plf.'s Brief at 21-22.)

We address each of Plaintiff's arguments in turn.

1. *The ALJ's failure to consider Dr. Razzak's records:* In his analysis of Plaintiff's medical history, Judge Kenworthy discussed her treatment for chronic pain. (Tr. 19.) He first

9

summarized the treatment provided by Dr. Tong Ho Ham[10] - acupuncture and a series of epidural injections in the lumbar region. The ALJ also referred to a complete physical examination performed on February 22, 2006, noting the history of her injury and the condition of her lumbosacral spine, in particular the fact that there was no trigger point or paravertebral tenderness in the area, but only 20 degrees of flexion, 10 degrees of extension and 5 degrees of lateral rotation. The ALJ also commented on the reports of straight leg raising which was positive at 10 degrees with active motion and at 30 degrees with passive motion. As part of this examination, Ms. Marshall was diagnosed with herniated discs at three levels of the lumbar spine, but no imaging studies were provided which confirmed that diagnosis. Judge Kenworthy referred to the diagnostic impressions of left lumbosacral radiculopathy and cervicalgia which the physician proposed to treat with lumbar epidural steroid injections, transforaminal injections and, possibly, a percutaneous diskectomy if the more conservative treatments did not provide relief. (Tr. 19.)

The ALJ also noted Dr. Ham had completed a physical assessment form indicating Plaintiff could lift and carry no more than 10 pounds, must alternate between sitting and standing at 10-15 minute intervals; must elevate her legs to waist level; and had numerous

---

[10] The ALJ refers to this physician repeatedly as "Dr. Tam" whereas the medical records show his proper name was "Dr. Ham."

10

postural limitations (e.g., no crouching or crawling, pushing or pulling limited to 10-15 pounds of force). The final point from Dr. Ham's assessment was his view that Ms. Marshall could not sustain work even at the sedentary level although she was otherwise capable of low stress jobs. (Tr. 19, *citing* Exhibit 12F, Tr. 225-228.)

The record shows that Plaintiff began treating with Dr. Ham in December 2003, who provided medication and acupuncture treatments through at least February 2006. In January 2006, Plaintiff asked Dr. Ham to provide a referral to a pain specialist and had her first examination by Dr. Razzak on February 22, 2006. (Tr. 253, 269-282.)

Plaintiff argues that the ALJ "never even mentioned Dr. Razzak's opinion and records in his decision." (Plf.'s Brief at 7.) This is literally true; however, as Defendant points out, the ALJ erroneously attributed the notes from the February 22, 2006 examination to Dr. Ham when they were actually those of Dr. Razzak. (Defendant's Brief in Support of Motion for Summary Judgment, Doc. No. 15, "Def.'s Brief," at 10.) Inasmuch as there appear to be no other notes dated February 22, 2006, and since the ALJ's summary thereof closely matches the report prepared by Dr. Razzak, we conclude that Defendant is correct.

The situation is further confused by the fact that the ALJ did properly attribute Exhibit 12F to Dr. Ham, in which he concluded as

11

of March 16, 2005, that Plaintiff could not sustain even low-stress work at the sedentary level. However, the ALJ did not mention a comparable report by Dr. Razzak dated March 8, 2006, who concluded Plaintiff could sustain employment at the sedentary exertional level and was capable of low stress jobs, but would likely miss two to four days of work per month. (Tr. 283-286.) Later in his analysis, Judge Kenworthy referred to "the opinion of Dr. [Ham] that the claimant would necessarily miss 2-4 days of work out of every month." (Tr. 24.) Since this information does not appear in Dr. Ham's physical assessment but does appear in Dr. Razzak's, it is clear the ALJ must have reviewed Dr. Razzak's March 8, 2006 report although he again mis-attributed the source of this opinion.

In short, contrary to Plaintiff's argument, the ALJ considered Dr. Razzak's physical examination notes from February 22, 2006, as well as his report of March 8, 2006. Thus, there is evidence from two treating physicians who opined that Plaintiff was greatly limited in her ability to work on a regular basis. In brief, Dr. Ham concluded in March 2005 that Plaintiff could not lift or carry more than 10 pounds; could stand and walk only 15 minutes at a time; could sit only 10-15 minutes without having to change positions; must elevate her legs to waist level when sitting; and was not able to sustain employment even at the sedentary level but would be capable of low stress-jobs; he did not opine about how many days Plaintiff could be expected to miss from work each month.

12

In contrast, Dr. Razzak stated in March 2006 that Plaintiff could not lift or carry more than 5-10 pounds; could stand or walk no more than 1-2 hours daily on an intermittent basis; could sit for 3-4 hours a day without interruption but whose ability to sit was not otherwise affected; did not need to elevate her legs while sitting; and could sustain regular employment at the sedentary, low stress level but would likely miss two to four days per month.

As Defendant points out correctly, the opinion - even by a treating physician -- that a claimant is disabled or unable to work is an issue reserved to the Commissioner of Social Security. (Def.'s Brief at 12-13, *citing* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1)); *see also* § 404.1527(e)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner.") While such opinions must be recognized, they are not to be given controlling weight or even special significance. *See* Zonak v. Comm'r of Soc. Sec., No. 07-3413, 2008 U.S. App. LEXIS 15885, *7 (3d Cir. July 24, 2008) (the ALJ was not obligated to give significant weight to the physician's opinion as to the claimant's ability to work because the opinion related to the ultimate issue of disability--an issue reserved exclusively to the Commissioner.)

Here, the ALJ noted Dr. Ham's opinion that Ms. Marshall could not work even at the sedentary level (Tr. 19) but declined to give it substantial weight "in view of his notes that are inconsistent

13

with and contradictory to the objective imaging studies and the ranges of motion found upon physical examination by other, more qualified, physicians, including Dr. Vermeire."[11] (Tr. 23.) While this Court may have arrived at a different conclusion from that of the ALJ on this point, we cannot say his decision is not supported by substantial evidence. *See* Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir. 1999) (if the ALJ's findings of fact are supported by substantial evidence and he has explained his reasoning, this court is bound by those findings "even if we would have decided the factual inquiry differently.") Moreover, had the ALJ specifically mentioned Dr. Razzak's finding with regard to Plaintiff's ability to work as stated in his March 2006 physical assessment, that opinion is consistent with the ultimate determination by the ALJ that Ms. Marshall could perform low stress, sedentary work. (Tr. 285.) Although Judge Kenworthy confused the reports of Drs. Ham and Razzak in his opinion, we find that his analysis of those reports was complete and unbiased. Therefore, this error does not require remand for further consideration. *See* Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (no need to remand where stricter compliance with Social Security regulations would not have changed the outcome of the case.)

---

[11] Dr. David Vermeire was Plaintiff's treating physician for the period immediately following her accident in September 2003 through January 2004 (Tr. 163), then again for the period June 14, 2004 through at least December 7, 2004. (Tr. 240-249.)

14

2. *The ALJ's conclusion at step two regarding Plaintiff's head and neck pain:* Plaintiff's second argument is that despite numerous references to Plaintiff's neck pain and headaches, the ALJ failed to discuss these impairments. The evidence is clear, Plaintiff contends, that following her accident, she reported cervical pain and headaches consistently to a physical therapist at Sharon Regional Health Rehabilitation Center; to a neurosurgeon, Dr. Ashvin Ragoowansi, with whom she consulted in November 2003;[12] to her chiropractor, Dr. Moschillo;[13] to Dr. Vermeire; to her treating psychiatrist, Dr. Ashraf Oloufa; and to Drs. Ham and Razzak. (Plf.'s Brief at 14-17.) According to Plaintiff, the ALJ erred by failing to make any finding with regard to the severity of these impairments at step two and this lack of consideration constitutes a *de facto* finding that they were not severe. Because the Social Security Administration requires a careful evaluation of all medically supported complaints at step two, the ALJ's omission requires remand for further consideration. (Id. at 17-20.)

A review of the ALJ's opinion shows that Plaintiff is

---

[12] Plaintiff consulted with Dr. Ragoowansi on two occasions, November 8 and 23, 2003. (Tr. 127-131.) There is no mention of neck pain or headaches in his report from the first consultation, but he ordered a cervical myelogram and, in his follow-up report, noted that the tests revealed "no significant pathology," but only "mild disc space narrowing" in that area.

[13] Plaintiff began seeing Dr. Moschillo on December 29, 2003, and, although scheduled for treatment three times a week thereafter, she received only one more treatment. (Tr. 158-162.)

incorrect in her conclusion that the ALJ "never" discussed her neck pain and headaches. He noted Dr. Vermeire's comment that Ms. Marshall had a full range of motion in her neck as of July 1, 2004.[14] (Tr. 18; *see also* Tr. 246.) He referred to Dr. Razzak's diagnostic impression of cervicalgia, although he also noted there was no objective medical evidence to support this finding. (Tr. 19; *see also* Tr. 271-272.) The ALJ especially commented on Plaintiff's testimony that she "experiences constant severe pain in her back and neck," and that "pain shooting from her neck causes headaches of a severe nature about two times per week." (Tr. 22.)

The medical evidence does reveal numerous complaints of head and neck pain between September 2003 and February 2006, particularly during the physical therapy Ms. Marshall underwent between September 23 and December 22, 2003. (Tr. 132-157.) The therapist noted, however, that the pain increased when Plaintiff did not do the prescribed exercises or take her medications. (*See*, e.g., Tr. 133, 137.) It is significant that none of Plaintiff's physicians found her complaints sufficiently alarming that they ordered diagnostic tests of her head and neck other than CTs and MRIs. On November 18, 2003, a CT scan of her cervical spine, taken at the request of Dr. Ragoowansi, showed "some mild disc space

---

[14] On July 1, 2004, Plaintiff asked for an appointment the same day because she was in "severe pain," which she rated as 10/10. At the appointment, she complained "of pain both in her neck & in her lower back. With regard to her neck today, she complains of just a little tenderness to the [left] of the base of the cervical spine; but she demonstrates [full range of motion] of her neck." (Tr. 246.)

16

narrowing at C5-6 with anterior osteophyte formation," satisfactory alignment, and normal impingement. Extension and flexion of the neck revealed a satisfactory range of motion. (Tr. 110.) A myelogram done the same day showed no evidence of herniated nucleus pulposus, spinal stenosis, or other definite evidence of abnormality. (Tr. 111.) In evaluating these tests, Dr. Ragoowansi stated he had no recommendations to make regarding surgery on her cervical spine and hypothesized that her neck pain could be musculoskeletal in nature. (Tr. 128.) An MRI taken on February 17, 2006, after Ms. Marshall reported continuous aching and sharp pains in her neck when turning her head, showed no evidence of fractures, dislocations or significant neural foraminal encroachment and degenerative changes which were "essentially unchanged" from an August 15, 2000 study.[15] (Tr. 275.) Similarly, an MRI performed on March 7, 2006, showed a normal spinal canal and spinal cord, no protruded or extruded disk, no spinal stenosis, and normal signal intensity from the marrow of the vertebral bodies – in short, a normal MRI of the spine. (Tr. 273.)

On March 8, 2006, Dr. Razzak's office notes indicate that a cervical spine MRI showed "broad-based disc herniation at the level of C5-6." (Tr. 269.) The Court has been unable to identify any such MRI in the administrative record and this finding is

---

[15] The Court has been unable to identify a copy of this study in the administrative record.

17

inconsistent with the MRI taken the previous day and with the CT scan done on November 18, 2003. Despite this statement, Dr. Razzak concluded that no intervention was needed at that time. (Tr. 269.)

While it is true Plaintiff repeatedly complained to her physicians of pain in her neck and head, they did not order neurological examinations, performed no tests to rule out migraine or tension headaches, and prescribed no medications other than those intended for general pain relief such as Tylenol #4, Ibuprofen 800, and Bextra. (Tr. 254 and 246.) The Court has been unable to identify any specific treatment for her neck or upper back pain except physical therapy. This lack of treatment for Plaintiff's headaches and neck pain is strong evidence that these conditions were not considered severe by her physicians. *See* <u>Lane v. Comm'r of Soc. Sec.</u>, No. 03-3367, 2004 U.S. App. LEXIS 10948, *14 (3d Cir. June 3, 2004), *citing* <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (3d Cir. 1983) (the ALJ is "entitled to rely not only on what the record says, but also on what the record does not say.")

We recognize that step two of the ALJ's analysis is a *de minimus* screening device under which any doubt should resolved in favor of the claimant. <u>McCrea v. Comm'r.</u>, 370 F.3d 357, 361 (3d Cir. 2004). It is true that at step two, Judge Kenworthy did not concentrate on Plaintiff's head and neck pain, focusing instead on the degenerative disk disease in her lumbar spine. It would, of course, have been a more complete analysis had the ALJ considered

Plaintiff's neck and head pain separately from the pain in her lower back and legs. In the absence of any evidence that Plaintiff's neck and head pain were of neurological origin, however, those conditions would have been properly addressed under Listing 12.04, musculoskeletal impairments, which the ALJ systematically and completely considered. (See Tr. 19.)

We are also mindful that as the reviewing court, we must consider only what is in the record before us and cannot attempt to "fix" a deficient analysis. *See* SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) (a reviewing court may only consider what is plain on the face of the ALJ's decision and may not "read into" it reasoning or conclusions which are not clearly stated); *see also* Fargnoli v. Halter, 247 F.3d 34, 43-44 and n.7 (3d Cir. 2001), concluding that the district court had erred when it recognized the ALJ's failure to consider all relevant and probative evidence and attempted to rectify this error through its own analysis, thereby violating Chenery. However, to show that her head and neck pain were "severe" as that term is defined by the Social Security Administration, Ms. Marshall would have to provide evidence that these conditions "significantly limited" her ability to perform basic work activities, i.e., the abilities and aptitudes necessary to do most jobs, including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *See* 20 C.F.R. § 404.1521(a) and (b)(1). Although several doctors noted the

19

effect of her lumbosacral degenerative disc disease on her ability to walk, stand, sit, push or pull, there is no comparable evidence pertaining to her complaints of pain in her neck and head.

Thus, we conclude that if, as Plaintiff argues, the ALJ arrived at a *de facto* decision that Ms. Marshall's head and neck pain were not severe, that conclusion was not erroneous. Nor do we find the lack of an explicit finding on this question grounds for remand. As the U.S. Court of Appeals for the Seventh Circuit has noted, "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989); *see also* Rutherford, supra.

  3. *The ALJ's incomplete hypothetical question:* At the hearing, the ALJ posed the following question to the Vocational Expert:

> If we assume an individual with the Claimant's age, education and work experience, and assume that she would be limited to work at the sedentary exertional level, where she would remain seated most of the work day, with a sit/stand option at intervals of about. . .one half hour, and further assume that she would be limited to work that would not involve rapid production, pace, or similar sources of a high level of work stress, would she be capable of performing work as an accounts [receivable] clerk?

(Tr. 323-324.)

Plaintiff's first objection to this question is that it omits any reference to her neck and head pain, in particular her

20

testimony that at least twice a week, she experiences such severe headaches that she must lie down or otherwise relieve the pressure from her neck. The second omission is the failure to include the possibility that Plaintiff would miss work a minimum of two times a month. (Plf.'s Brief at 21-22.) Again, Plaintiff argues that under established Third Circuit case law, these omissions require remand.

A proper hypothetical question is one which includes all the claimant's limitations credibly established in the record. Ramirez v. Barnhart, 372 F.3d 546, 552-555 (3d Cir. 2004), Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999). This includes limitations which are not severe. Burnett v. Commissioner of SSA, 220 F.3d 112, 122 (3d Cir. 2000) ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity.") However, the ALJ is not required to incorporate every limitation alleged by Plaintiff. As the Court explained in Rutherford, the hypothetical questions must "accurately portray" the impairments and the vocational expert must be given an opportunity to evaluate those medically established impairments "as contained in the record." Rutherford, 399 F.3d at 554.

As the Court further explained, in order for the vocational expert's response to be considered substantial evidence, a proper hypothetical question must include "[l]imitations that are medically supported and otherwise uncontroverted in the record."

21

In addition, "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible." Those which the ALJ finds credible should be included, but if he rejects such limitations - and provides a rational basis for doing so - the hypothetical question is not deficient. Rutherford, id., *quoting* Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1992) (the ALJ "cannot reject evidence for no reason or for the wrong reason.") Finally, limitations asserted by the claimant which lack objective medical support may be considered credible. Again, the ALJ can reject such limitations based on conflicting evidence in the record, "but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it." Rutherford, id.

There is no question that the record contains numerous references to Plaintiff's headaches and neck pain although there is not, to the best of the Court's ability to discern, medical evidence to support her testimony that she must periodically lie down to relieve the pressure in her neck. The ALJ explicitly considered Plaintiff's allegations of disabling pain, noting:

> The claimant testified that she experiences constant severe pain in her back and neck. The pain is extended into her legs, which become numb. Pain shooting from her neck causes headaches of a severe nature about two times per week. She also claimed that she experiences spasms in the muscles of her back and legs on a daily basis. She claimed that she can walk without severe pain no more than one block and stand no more than 15 to 20 minutes.

22

(Tr. 22.)

The ALJ concluded that while Ms. Marshall's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, her statements concerning the intensity, duration and limiting effects thereof were "not entirely credible." (Tr. 23.) The objective medical evidence on which he relied in arriving at this conclusion were the observations by Drs. Vermeire and Oloufa that Ms. Marshall had a "tendency to exaggerate her symptoms of pain and depression" and that she was "poorly motivated for treatment." (Tr. 23, see also Tr. 186 (Dr. Oloufa: "she is [complaining of] pain but [is] not objectively distressed") and Tr. 244 (Dr. Vermeire: "I do have a feeling that this lady has [some] degree of symptom magnification.")) Since the ALJ addressed the issue of pain in his decision and his conclusion that her allegations were not entirely credible is supported by the record, it was well within his discretion to omit such limitations from his hypothetical question. See Hirschfeld v. Apfel, 159 F. Supp.2d 802, 811 (E.D. Pa. 2001), citing Capoferri v. Harris, 501 F.Supp. 32, 37 (E.D. Pa. 1980), aff'd, 649 F.2d 858 (3d Cir. 1981), and Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975) (the ALJ has discretion to make credibility determinations and may reject claims of disabling pain "if he affirmatively addresses the claim in his decision, specifies the reasons for rejecting it, and has support for his conclusion in

23

the record.")

Having considered each of Plaintiff's arguments in support of her motion for summary judgment, we find none of them persuasive. Summary judgment is therefore granted in favor of Defendant. An appropriate order follows.

February  __11__ , 2009          _William L. Standish_
                                 William L. Standish
                                 United States District Judge